Michael G. PARKER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9607–CR–00496.

Supreme Court of Indiana.

July 8, 1998.

any or all of the State's evidence, no matter how          unimpeachable it may be'').

738

her sister, Karen Clayborn, her sister's friend, Harry Turner, and defendant. Clayborn intended to buy food stamps from defendant with money Clayborn would borrow from Rhodes. These transactions never took place. Instead, defendant pulled out a gun, pointed it at Rhodes and demanded the money. Rhodes dropped it on the seat, and the two women fled. They immediately reported the incident to police. Turner remained in the car and later reported to police that after the women left, defendant pointed the gun at him and took his gold necklace.

After the witnesses identified defendant in a pre-trial photo array, he was arrested and charged with two counts of robbery while armed with a deadly weapon and with being a habitual offender. During the guilt phase of the trial and over defendant's objection, the witnesses were allowed to testify about their pre-trial identification of defendant and to identify him at trial. The jury returned a guilty verdict on the charge that defendant robbed Rhodes of her money, but a not guilty verdict on the charge that defendant robbed Turner of his gold necklace.

Two weeks later the jury was reassembled to hear the habitual offender phase of the trial. The prior felony convictions necessary for the habitual offender finding were proved with documentary evidence, to which defendant objected. The trial court overruled defendant's objection to instructing the jury that if it found that the State had proven the prior felonies, it "should" find defendant to be a habitual offender. The jury found defendant to be a habitual offender and the trial court sentenced him to life without the possibility of parole. Additional facts will be provided as necessary.

Defendant raises the following issues:

1. Whether the pre-trial identification procedures were unduly suggestive;

2. Whether the jury was properly instructed with regard to habitual offender status; and

Lesa Lux Johnson, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Judge.

Following a jury trial, defendant Michael G. Parker was convicted of Robbery[1] and found to be a habitual offender.[2] He was sentenced for the robbery to twenty years, which was the maximum enhanced term for this class B felony,[3] and, on account of the habitual offender finding, his sentence was further enhanced to life without parole.[4]

Defendant appeals. The life sentence gives us jurisdiction over this direct appeal.[5] We affirm in part and reverse in part.

### Background

A summary of the facts most favorable to the judgment follows. After withdrawing $120 from an automated teller machine, the victim, Arnetra Rhodes, got into a car with

---

1. Ind.Code § 35–42–5–1 (1993) (a class B felony when a deadly weapon is used).

2. Ind.Code § 35–50–2–8 (Supp.1994).

3. Ind.Code § 35–50–2–5 (1993).

4. Ind.Code § 35–50–2–8.5 (Supp.1994).

5. Ind. const. art. VII § 4; Ind.Appellate Rule 4(A)(7).

3. Whether there was sufficient evidence to support the habitual offender finding.

## Discussion

### I

Defendant contends that the witnesses' pre-trial identifications were the result of an unduly suggestive police procedure, which, in turn, tainted their in-court identifications such that evidence of neither should have been admitted at trial. Defendant has preserved this error for review by way of a motion to suppress and an objection at trial.

■ Due process of law under the Fourteenth Amendment requires suppression of testimony about a pre-trial identification when the procedure employed is unnecessarily suggestive. *Farrell v. State,* 622 N.E.2d 488, 493 (Ind.1993); *Bell v. State,* 622 N.E.2d 450, 454 (Ind.1993); *James v. State,* 613 N.E.2d 15, 27 (Ind.1993). Otherwise, the defendant is subjected to the unacceptable risk that the identification process was conducted in such a way that it created a substantial likelihood of irreparable misidentification. *Farrell,* 622 N.E.2d at 493. "Whether the procedure employed was 'unnecessarily suggestive' in a particular case is to be determined under the totality of the circumstances." *James,* 613 N.E.2d at 27. *See Harris v. State,* 619 N.E.2d 577, 580 (Ind.1993). "If under the totality of the circumstances, the reviewing court finds the out-of-court procedures were not impermissibly and unnecessarily suggestive, both the evidence of the pretrial lineup and the in-court identification are considered to have been properly admitted by the trial court, and there is no need to proceed further." [6] *Harris,* 619 N.E.2d at 580 (citing *Brooks v. State,* 560 N.E.2d 49, 55 (Ind.1990)). *See Farrell,* 622 N.E.2d at 494; *Bell,* 622 N.E.2d at 454.

■ "Factors to be considered in evaluating the likelihood of a misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness." *Farrell,* 622 N.E.2d at 493–94; *James,* 613 N.E.2d at 27; *Brooks,* 560 N.E.2d at 55 n. 1. Among other factors the court may consider are (1) the manner and form in which the police asked the witness to identify the suspect and the witness's interpretation of their directives and (2) whether the police focused on the defendant as the prime suspect, either by their attitude or the makeup of the photo array. *Bell,* 622 N.E.2d at 454; *Brooks,* 560 N.E.2d at 55.

In defendant's case, Rhodes and Clayborn met with Indianapolis Police Detective Grant the day after the robbery. The sisters examined a computer-selected array consisting of some fifty to sixty photographs of men with the general physical attributes they had described. They viewed the photographs as images on a computer screen. Neither sister identified a suspect from this array, and whether defendant's photograph was included is unknown.

About one week later, Rhodes informed Detective Grant that she had just seen the robber in the same car in which the robbery had occurred, and that she had obtained the license plate number. Investigation showed that the car was registered to defendant. With this new information, Officer Grant asked Rhodes and Clayborn to look at another photo array.

This time, the sisters viewed color images of six men on the computer. Detective Grant included defendant's image in the array. The other men were selected with the help of the computer, and they all shared similar physical characteristics. Separately, Detective Grant ushered each sister into the computer room, and instructed each to look at the images. Each took about thirty seconds to identify defendant's image as that of the robber. When each sister had finished view-

---

**6.** *See also McGowan v. Miller,* 109 F.3d 1168, 1173 (7th Cir.1997) (" 'Whether a pretrial identification procedure is unduly suggestive and whether a witness's subsequent identification is nonetheless reliable under the totality of the circumstances are two separate inquiries that should be approached sequentially[.]' *United States v. Johnson,* 859 F.2d 1289, 1294 (7th Cir. 1988).").

ing the images, they stepped into another room, and signed a paper identifying defendant as the robber. A few days later, Turner repeated the same process and also selected defendant's image.

Defendant asserts that Detective Grant's comments made the procedure unduly suggestive because he indicated that the suspect was in the photo array. Br. of Appellant at 10. This assertion is not accompanied by citation to the record and our review of the record reveals no such evidence. *See Brooks,* 560 N.E.2d at 57 (no indication in record that police called attention to appellant in line up); *cf. Sawyer v. State,* 260 Ind. 597, 601–2, 298 N.E.2d 440, 443 (1973) (identification procedure may be unduly suggestive if police indicate suspect's photo included in the array).

■ Defendant also contends that the procedure was unduly suggestive because Detective Grant asked "Is that him?" as Clayborn looked at each picture. At trial, Clayborn testified that Detective Grant did not ask this question until *after* Clayborn had identified Defendant. In contrast, Clayborn's deposition testimony could be interpreted as indicating that the question was posed before she had made her selection. We believe that any discrepancy between Clayborn's trial testimony and deposition testimony was appropriately left for the trier of fact to resolve.

■ None of the other circumstances suggest an infirm pre-trial identification procedure. Each witness who identified defendant had sufficient opportunity to view him during the robbery so as to form the basis for the pre-trial identification. In fact, both Clayborn and Turner were already acquainted with defendant, though only as a man they knew as "Big Poppa." Each witness identified him without hesitation. Contrary to defendant's suggestion, the length of time between the robbery and the pre-trial identification, which was less than two weeks, does not suggest an invalid procedure. *See, e.g., Farrell,* 622 N.E.2d at 494 (concluding that ten months was not too long on the facts of that case). The witnesses' descriptions of defendant were reasonably consistent with

his appearance in the computer-generated array and at trial, notwithstanding defendant's efforts on appeal to highlight discrepancies in the various descriptions of his clothing, his facial hair and the color of his car. In the context of the other strong evidence of a valid identification, any discrepancies can be described as minor.

In summary, we find the evidence amply supports the trial court's conclusion that there was nothing unnecessarily suggestive in the pre-trial identification procedure that would have influenced the witnesses' identification. As such, there is no need to evaluate defendant's contention that the in-court identifications were tainted by the pre-trial identifications. *Bell,* 622 N.E.2d at 455; *Brooks,* 560 N.E.2d at 55.

II

Defendant contends that the trial court erred by instructing the jury that if it found that the State had proved the predicate felonies, it "should" find defendant to be a habitual offender. He argues that the jury is entitled to make a determination of habitual offender status as a matter of law independent of its factual determinations regarding the predicate felonies.

Habitual offender status is given to persons under certain circumstances for the purpose of sentencing. For many years, habitual offender proceedings have been governed by Ind.Code § 35–50–2–8. Under that section, the State may seek to have an accused sentenced as a habitual offender for any charged felony if the accused has accumulated two prior unrelated felony convictions. In 1994, the General Assembly added a new habitual offender provision, Ind.Code § 35–50–2–8.5 (Supp.1994). The State may proceed under this provision when it alleges that the charged felony and the two prior unrelated felonies are all felonies for which the minimum sentence is not suspendable.[7] When the accused is convicted of the charged felony, the jury reconvenes for the habitual offender sentencing phase. Ind.Code § 35–50–2–8.5(b). The State must prove beyond a reasonable doubt that the defendant has ac-

---

**7.** These felonies are listed in Indiana Code § 35–50–2–2(b)(4) (Supp.1994).

cumulated the requisite two prior unrelated felony convictions. Ind.Code § 35–50–2–8.5(c). If the jury finds the defendant to be a habitual offender, the court may sentence the defendant to life imprisonment without parole. Ind.Code § 35–50–2–8.5(d). *See* Gary L. Miller & Kelly Rota–Autry, *Recent Developments in Indiana Criminal Law and Procedure*, 28 Ind.L.Rev. 819, 824 (1995).

■ The thrust of defendant's claim is that the instruction provided by the court impermissibly impinged upon the jury's role under art. I, § 19, of the Indiana Constitution to determine the law as well as the facts.[8] In our view, the instruction did invade the jury's prerogative by directing the jury to determine defendant to be a habitual offender upon finding that the State properly proved two prior felonies.[9] We recently found an analogous instruction to violate art. I, § 19, of the Indiana Constitution. *See Seay v. State*, 698 N.E.2d 732, 733 n.2, 737 (Ind.1998).[10] In *Seay*, we definitively established that art. I, § 19, is applicable during habitual offender proceedings, and thus the jury has the power in such circumstances to determine both the law and the facts. *Seay*, 698 N.E.2d at 736. Encompassed within this power is the jury's independent and separate

authority to determine whether the defendant is a habitual offender after it has concluded that the State has properly proven two prior felonies. *Seay*, 698 N.E.2d at 736 (adopting *Duff v. State*, 508 N.E.2d 17, 23 (Ind.1987) (separate opinion of Dickson, J.)). The instruction advising the jury that it "should" find defendant to be a habitual offender if it found that the State had properly proven two prior felonies prevented the jury from making an independent and separate decision on habitual offender status. Our decision in *Seay* was aimed at preventing exactly this type of result.

■ Defendant acknowledges that reversible error does not necessarily occur when the type of instruction provided in this case is accompanied by another instruction informing the jury that it is the judge of the law and the facts. *See, e.g., Loftis v. State*, 256 Ind. 417, 420, 269 N.E.2d 746, 747–8 (1971). *See also Mitchem v. State*, 503 N.E.2d 889, 891 (Ind.1987) (following *Loftis*). Defendant argues, however, that the manner in which the trial court gave the "judge of the law and facts" instruction was inadequate in this case.

The trial court gave two instructions that informed the jury it was the judge of the law and the facts.[11] These were read as prelimi-

8. Article I, § 19, of the Indiana Constitution provides:

    In all criminal cases whatever, the jury shall have the right to determine the law and the facts.

9. While the use of the word "should" does not necessarily mandate that the jury make such a finding as would have the use of the word "shall," we still find that by instructing the jury that it "should" find defendant to be a habitual offender, the jury was led to believe that it did not have the discretion to find otherwise. We also note that the form of verdict provided to the jury during the habitual offender phase did not provide an option for the jury to exercise its discretion in this regard. *See Seay v. State*, 698 N.E.2d 732, 735 n.7 (Ind.1998) (disapproving special verdict forms with similar effect).

10. In *Seay v. State*, the jury was told that in sentencing cases the Indiana Constitution made the jury the judges of only the facts and because the habitual offender proceeding pertained only to sentencing, the jury was restricted to deter-

mining the facts only and not the law. *Seay*, 698 N.E.2d at 733 n.2. While the instructions given in *Seay* were even more intrusive on the jury's rights under art. I, § 19, than those provided in this case, the principle established in *Seay* is nevertheless applicable here.

11. Preliminary Instruction Number 1 stated:

    Ladies and Gentlemen of the Jury:
    It is the duty of the Court to instruct you in writing at this time concerning matters of law which are necessary for your information as you listen to the evidence and determine your verdict.
    In discharging this duty, the Court has no right to assume, and does not assume that any fact or facts will be established or not established, it is your exclusive right and duty under the Constitution of the State of Indiana to determine from all of the evidence what has and what has not been proven.
    As a matter of fact, the Court now so instructs you, in this a criminal case, you are the judges of both the law and the facts.

nary instructions at the beginning of the guilt phase and were sent in with the jury during its guilt phase deliberations. As noted under *Background, supra,* it was not until two weeks after the jury had rendered its verdict in the guilt phase that the jury reconvened for the habitual offender phase. After the trial court rejected defendant's request to substitute "may" for "should" in the instruction at issue, defendant asked the trial court to instruct the jury that it was the judge of the law as well as the facts. The trial court also overruled this request on grounds that such an instruction had been read as part of the preliminary instructions. The trial court did say that it would tell jurors to keep the preliminary instructions in mind, and would send the instructions to the jury room during deliberations. But in doing so, the court made no specific mention of the law and facts instruction.

■■■■■ On appeal, defendant contends that the two-week delay between the guilt phase and the habitual offender phase rendered the preliminary instruction inadequate to compensate for the erroneous "should" instruction. We agree. In *Mellott v. State,* 500 N.E.2d 173, 174 (Ind.1986), where the trial court refused to give a final instruction on self-defense because such instruction had already been given in the preliminary instructions, we emphasized that where "an issue is pertinent in a cause and is given to the jury in a preliminary instruction, it is important that this instruction be re-read to the jury as a part of the final instructions." [12] Similarly, because art. I, § 19, is so firmly ingrained as a fundamental principle in Indiana constitutional law, it was important that the court re-read the guilt phase preliminary instruction during the habitual offender phase. When the trial court both (i) provided over defendant's objection an instruction which minimized the jury's power of discretion in making a determination on habitual offender status, and (ii) refused over defendant's objection to re-read the guilt phase instruction (which had been delivered two weeks earlier) advising the jury that it was the judge of both the law and the facts, the trial court committed reversible error. Consequently, defendant is entitled to have the habitual offender determination vacated.

### III

■■■■ Defendant contends that the evidence is insufficient to support the finding that he is a habitual offender. If so, the State would be precluded from re-trying defendant as a habitual offender because "[t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars reprosecution of a habitual offender charge where the State has failed to prove that status due to insufficient evidence." *Poore v. State,* 685 N.E.2d 36, 39 (Ind.1997) (citing *Bell,* 622 N.E.2d at 456).[13]

The State was required to prove that defendant was convicted of and sentenced on two prior felonies, that he committed the second felony after being sentenced on the first, and that he committed the current offense after sentencing on the second. Ind. Code § 35–50–2–8.5; *Mayo v. State,* 681 N.E.2d 689, 693 (Ind.1997) (interpreting

---

If, however, you shall have no well defined opinions as to what the law is relating to any particular matter or matters in issue in this case, then, in determining the law, you should give the instructions of the Court respectful consideration. (R. at 91.)

Preliminary Instruction Number 2 stated:

You are the exclusive and sole judges of what facts have been proven and you may also determine the law for yourselves. This statement does not mean that you have the right to disregard the law or to set it aside and make your own law. You should determine the law as it is enacted by the legislature of this state and considered and interpreted by the higher courts of record, and in that way you have the right to determine the law for yourselves, but not to make your own laws. (R. at 92.)

12. In *Mellott v. State,* 500 N.E.2d 173, 174 (Ind. 1986), we found the error to be harmless because of the brevity of the trial, *i.e.,* the amount of time elapsed between the preliminary and final instructions. Here, the two week gap between the guilt and habitual offender phases points in the other direction.

13. The United States Supreme Court's recent opinion in *Monge v. California,* —— U.S. ——, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), implicates this principle. Given our conclusion *infra,* we elect not to apply *Monge* here as the parties have not had the opportunity to brief its applicability.

**744**

identical language in Ind.Code § 35–50–2–8). The State sought to prove the requisite prior felony convictions for a 1978 robbery and a 1983 robbery with certified copies of the charging documents, the arrest records and the commitment orders. We have previously approved this general procedure. *See Brown v. State,* 650 N.E.2d 304, 306 (Ind. 1995). To provide the link between these documents and defendant, the State presented the testimony of a fingerprint technician who testified that defendant's fingerprint matched those in the 1978 and 1983 arrest records, and the testimony of a deputy clerk who testified as to certain cause numbers.

Defendant concedes that the documentary evidence met the requirements for self-authentication. Ind.Trial Rule 44(A); Ind.Evidence Rule 1005. He contends, however, that certain discrepancies in the documents mean that the State failed to prove he was the Michael Parker who was convicted of these earlier robberies.

Documents pertaining to the 1978 robbery were admitted, over Defendant's objection, as Exhibits 7 and 9. Exhibit 7 contained an information charging a Michael Gene Parker with robbery and a judgment of commitment showing an eight year sentence. Both documents bear a cause number of CR78–237C. Exhibit 9 was an arrest record showing that a Michael Parker was arrested for robbery in 1978. The box labeled "cause no." on the upper portion of Exhibit 9 shows "1078–2420," which obviously does not match the cause number in Exhibit 7. Defendant contends that, as a result, the State's proof that he was the same person arrested and convicted for this 1978 robbery was insufficient. The State, however, accurately points out that the lower portion of Exhibit 9 references the same cause number as Exhibit 7. In addition, the fingerprint technician testified that defendant's print matched those in the Exhibit 7 arrest record. The technician also testified that the cause number corresponding with that arrest report was CR–78–237C.

Documents pertaining to the 1983 robbery were admitted, also over defendant's objection, as Exhibits 8 and 10. Exhibit 8 consisted of an abstract of judgment under cause number CR83–055E and an information charging robbery and carrying a handgun without a license. The information does not contain a legible cause number. Defendant contends that as a result, there is no evidence connecting the information to the abstract of judgment. Again, however, the State notes that the deputy clerk identified the exhibit as an accurate copy of the original information in cause number CR–83–055E.

The coincidence in time, place, and type of conviction shown by the documentary evidence and the testimony was sufficient to allow a reasonable trier of fact to conclude beyond a reasonable doubt that defendant was the same person named in the documentary evidence associated with the prior convictions. Minor errors or discrepancies do not compel reversal. *See Bell,* 622 N.E.2d at 456; *Arthur v. State,* 499 N.E.2d 746, 748 (Ind.1986) (holding that use of slightly different name on documents relating to prior conviction does not render the evidence insufficient where fingerprint technician identified defendant as the person previously convicted). There is sufficient evidence to sustain the habitual offender finding.

*Conclusion*

We affirm the robbery conviction but vacate the habitual offender determination. We remand this cause to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.