Terry JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–9901–CR–3.

Court of Appeals of Indiana.

Oct. 12, 1999.

Michelle F. Kraus, Fort Wayne, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant Terry Johnson appeals his conviction for Intimidation,[1] a Class D felony, and his adjudication as an habitual offender. Specifically, Johnson argues that the evidence was insufficient to sustain his conviction for intimidation. Moreover, with respect to the habitual offender phase of the proceedings, Johnson contends that the trial court committed reversible error when it instructed the jury that it should find him to be an habitual offender if the State proved beyond a reasonable doubt that he committed two prior unrelated felonies.

### FACTS

The facts most favorable to the verdict reveal that on May 8, 1998, Fort Wayne Police Officers Chris Crapser and Kevin Miller arrived at Michelle Mayberry's home following a 911 call from Mayberry. Officer Crapser then observed lights flickering on and off inside the house. As the officers approached the house, they heard a woman yelling for help. The officers then heard a very irate man's voice yell something to the effect of "shut up or I'm going to kill you." Record at 131–32. As Mayberry continued to plead for help, often in a muffled tone, the officers heard

---

1. IND CODE § 35–45–2–1.

scuffling inside the house as if there was a fight in progress.

Upon receiving clearance to enter the home, Officer Crapser broke the glass out of the screen door. As he did this, he heard another scuffle inside and then Mayberry ran to the door and opened it. She was extremely hysterical, crying and screaming that Johnson was going to hurt her. Moreover, Officer Crapser observed fresh bruises on Mayberry's left cheek and around her mouth. She told Officer Crapser that, following a scuffle, Johnson threw her down to the ground and held her mouth shut while the officers were outside. Johnson was found in the residence naked and apparently in an intoxicated state. He later admitted to Officer Crapser, using a more explicit term, that he had messed up.

Thereafter, the State charged Johnson with battery, as a Class D felony, and intimidation, a Class D felony. The State also alleged that Johnson was an habitual offender. A jury trial commenced on September 8, 1998. During final instructions in the guilt phase of the trial, the trial court instructed the jury that it was the judge of the law and facts.[2] The jury subsequently found Johnson guilty of battery, as a Class A misdemeanor, and intimidation.

The following morning, on September 9, the jury reconvened for the habitual offender phase of the trial. Among the preliminary instructions, the trial court instructed the jury that if it found that the State had proved the predicate felonies, it should find Johnson to be an habitual offender.[3] The trial court further instructed the jury that it should keep in mind the instructions previously given during the guilt phase. During deliberations, the jury submitted a note to the trial court inquiring as to whether it could find that Johnson committed two prior, unrelated felonies and still find him not guilty of being an habitual offender. The trial court responded in writing that it could not give the jury any further instructions on the law and that the jury should rely on the instructions which they had received. The jury subsequently found Johnson to be an habitual offender. The

2. The trial court began the final instructions as follows:

It is the duty of the court to instruct you in writing at this time concerning the matters of law which are necessary for your information in giving your verdict.

*Since this is a criminal case, the Constitution of the State of Indiana makes you the judges of both the law and the facts.* Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of the court are the best source as to the law applicable to this case.

In deciding this case, you must determine the facts from a consideration of all the evidence and the law from these instructions and find your verdict accordingly. All of the law of this case has not been embodied in any one instruction. Therefore, in construing any single instruction you should consider it with all other instructions given.

R. at 52 (emphasis added).

3. Specifically, the trial court instructed that the status of Habitual Offender is defined by statute as follows:

The State may seek to have a person sentenced as an habitual offender for any felony by proving that the person has accumulated two (2) prior unrelated felony convictions.

To convict the defendant, the State must have proved each of the following elements:

The defendant, Terry Johnson,

1. committed and was convicted and sentenced for a felony, to wit: Possession of Cocaine, and;

2. thereafter committed and was convicted and sentenced for a felony, to wit: Burglary and;

3. thereafter committed the crime for which the defendant is now on trial, a felony offense.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not to be an habitual offender.

*If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant to be an habitual offender.*

R. at 70 (emphasis added).

trial court then sentenced him to consecutive sentences of one year for the battery conviction, two years for the intimidation conviction, and two years for the habitual offender enhancement. Johnson now appeals.[4]

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Johnson first argues that the evidence was insufficient to support his conviction for intimidation. While he concedes that his statement to Mayberry clearly constituted a threat, Johnson argues that the threat was not made with the intent that Mayberry "engage in conduct" against her will as set forth in the intimidation statute.[5] I.C. § 35–45–2–1. Specifically, he contends that the words "engage in conduct" intimate a proactive or affirmative action. Therefore, Johnson reasons that demanding that someone be silent cannot be construed as intending to have the person engage in conduct.

■ When reviewing a claim of sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *McKinney v. State*, 686 N.E.2d 844, 845 (Ind.1997). We look only to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* This court will affirm the conviction if evidence of probative value exists from which the trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

■ In the instant case, we are unpersuaded by Johnson's argument. Specifically, we note that intimidation has traditionally encompassed threats made with the intent that someone remain silent and refrain from acting. The most apparent example of this is a threat to a witness in a criminal trial with the intent that she refrain from testifying against the defendant. *See e.g. Williams v. State*, 677 N.E.2d 1077, 1082–83 (Ind.Ct.App.1997) (finding sufficient evidence of intimidation where defendant approached a prospective witness and stated that "you better not testify against me"); *Long v. State*, 492 N.E.2d 700, 702–03 (Ind.Ct.App.1986) (finding sufficient evidence of intimidation where defendant threatened victim with criminal confinement and criminal deviate conduct and further threatened that "there would be trouble" and "she would be sorry" if he ever found out that she signed statements or anything else against his brother, who had recently been charged in a shooting death). We see no relevant distinction between refraining from testifying by remaining silent and refraining from alerting the police by remaining silent. Therefore, we hold that both encompass "engaging in conduct" as applied to the intimidation statute, and we find that the evidence was sufficient to support Johnson's conviction for intimidation.[6]

---

**4.** Johnson does not challenge his conviction for battery in this appeal.

**5.** I.C. § 35–45–2–1 provides in relevant part as follows:

> (a) A person who communicates a threat to another person, with the intent that:
> (1) the other person engage in conduct against his will;
> ....
> commits intimidation, a Class A misdemeanor.
> (b) However, the offense is a:
> (1) Class D felony if:
> (A) the threat is to commit a forcible felony;
> ....

**6.** At the end of his sufficiency of the evidence argument, Johnson briefly notes that Mayberry testified that she did not feel the alleged threat to be real, as both she and Johnson had used these words before. Therefore, he asserts, without citing to any authority, that "even if the words objectively could be considered 'threats', due to the 'victim's' perception that the threats were not real, the expression of the words in this context is insufficient to prove the offense of Intimidation." Appellant's Brief at 19. We note that at trial, Mayberry's description of her fiancé's actions on the night in question not only conflicted with Officer Crapser's testimony, but also conflicted with her earlier statements to police. Thus, we refuse Johnson's invitation to reweigh the evidence and judge witness credibility. *See McKinney*, 686 N.E.2d at 845.

## II. Habitual Offender Instruction

Johnson next argues that the trial court erred by instructing the jury in the habitual offender phase that if it found that the State had proved the predicate felonies, it "should" find him to be an habitual offender. Specifically, he relies on *Parker v. State*, 698 N.E.2d 737 (Ind.1998), wherein our supreme court held that such an instruction impermissibly impinges on the jury's role under art. I, § 19, of the Indiana Constitution to determine the law as well as the facts.[7] *Id.* at 742 (citing *Seay v. State*, 698 N.E.2d 732, 733–737 (Ind.1998)).

Initially, we note that with regard to the giving of an instruction, no error shall be available on appeal except where there is a specific objection made before the jury retires for deliberations. *Warren v. State*, 701 N.E.2d 902, 905 (Ind. Ct.App.1998), *trans. denied.* Thus, Johnson has waived review of this issue, as he neither objected to the challenged instruction at trial nor tendered his own instruction. *Id.*

Waiver notwithstanding, we will address the merits of Johnson's argument. While we agree that the trial court erred in giving the aforementioned instruction, we note, and Johnson acknowledges, that reversible error does not necessarily occur when this type of instruction is accompanied by another instruction informing the jury that it is the judge of the law and the facts. *Parker*, 698 N.E.2d at 742. The determination of whether the trial court committed reversible error requires an examination of the manner in which the trial court gave the "judge of the law and facts" instruction. *See id.* at 742–43.

In *Parker*, the trial court gave two preliminary instructions at the beginning of the guilt phase which informed the jury that it was the judge of the law and facts. *Id.* The jury reconvened for the habitual offender phase two weeks after rendering its verdict in the guilt phase. *Id.* at 743. During the habitual offender phase, the trial court rejected the defendant's request that "may" be substituted for "should" in an instruction similar to the one at issue in the instant case. *Id.* Thereafter, the trial court overruled the defendant's request that the jury again be instructed that it was the judge of the law and facts. *Id.* Instead, the trial court instructed the jury to keep the preliminary instructions in mind and sent such instructions to the jury room during deliberations. *Id.* Further, the special verdict form provided to the jury during the habitual offender phase did not provide an option for the jury to exercise its discretion to find the defendant not to be an habitual offender despite finding that the State proved the underlying felonies. *Id.* at 742 n. 9. On appeal, our supreme court held that the two-week delay between the guilt phase and the habitual offender phase rendered the preliminary instructions inadequate to compensate for the erroneous "should" instruction. *Id.* at 743.

Johnson concedes that a "major distinction" between the facts in *Parker* and the instant case is the length of delay between the guilt phase and the habitual offender phase of the trial. Appellant's Brief at 16. Specifically, the delay was two weeks in *Parker* and less than one day[8] here. An additional distinction is that the "judge of the law and facts" instruction was given as part of the final instructions at the end of the guilt phase in the instant case, while in *Parker*, it was only given in the preliminary instructions at the beginning of the

---

7. Article I, § 19, of the Indiana Constitution provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts."

8. The record indicates that during the guilt phase on September 8, final instructions were given and then the jury retired to deliberate at 3:40 p.m., returning a verdict at 5:40 p.m. The next morning at 9:30 a.m., the jury reconvened for the habitual offender phase, at which time preliminary instructions were read to the jury.

guilt phase. Furthermore, here, the jury's discretion was not limited by a special verdict form. For all of the above reasons, we find *Parker* distinguishable. Moreover, while the better practice would have been to give the instructions contemporaneously, we cannot agree with Johnson that the overnight "delay" rendered the "judge of the law and facts" instruction fundamentally inadequate to compensate for the erroneous "should" instruction.[9]

## CONCLUSION

In light of our resolution of the above issues, we hold that the phrase "engage in conduct" as set forth in the intimidation statute encompasses the act of remaining silent and refraining from doing something. Therefore, we find that the State presented sufficient evidence to support Johnson's conviction for intimidation. Further, we conclude that Johnson has waived the issue of whether the trial court incorrectly instructed the jury during the habitual offender phase. Moreover, we hold that the error was not fundamental, as the "judge of the law and facts" instruction given the previous night during final instructions in the guilt phase adequately compensated for such error.

Judgment affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.

---

9. Further, we note that during closing remarks in the habitual offender phase, Johnson's counsel pleaded with the jury not to make Johnson's situation any worse and re-minded the jury that "[s]ince this is a criminal case, the Constitution of the State of Indiana makes you the judges of both the law and the facts." Supp. R. at 8.