Milton KENNEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0809–CR–537.

Court of Appeals of Indiana.

June 25, 2009.

Transfer Denied Sept. 11, 2009.

Lisa M. Johnson, Brownsburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Milton Kenney[1] appeals his conviction for felony murder.[2] Kenney raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction. We affirm.

The relevant facts follow. On August 24, 2007, Jason Noyd received a telephone call from an individual who wanted to purchase marijuana. Noyd and Joseph Price drove to a gas station on West 16th Street in Indianapolis to meet the individual. When they arrived, Noyd went into the gas station, and Price remained in Noyd's vehicle. Shortly thereafter, Dejuan Sampson pulled up in a red Chevrolet Tahoe and parked behind the gas station. Sampson entered the gas station, where he and

---

1. Although the briefs in this appeal identify the defendant as "Milton Kenny," the transcript, charging information, and presentence investigation report identify him as "Milton Kenney."

2. Ind.Code § 35–42–1–1 (Supp.2007).

Noyd were seen on a surveillance video. Sampson and Noyd then left the station and entered Noyd's vehicle, with Noyd sitting in the driver's seat, Price sitting in the front passenger's seat, and Sampson sitting in the back seat behind Noyd. While Noyd and Sampson were discussing the marijuana deal, Price saw a second man come from the back of the gas station and walk up to Noyd's vehicle. Price described the man as a light-skinned African American male with short hair between the ages of twenty-five and thirty, weighing approximately 175 pounds, standing approximately five feet seven inches to five feet eight inches in height, and wearing an orange or "yellow orange" shirt. Transcript at 176.

The man walked up to the rear passenger side of Noyd's car and attempted to enter the car, but it was locked. According to Price, Sampson unlocked the back passenger door, and the man entered the backseat of the car. Sampson and the other man pulled out guns, grabbed Noyd and Price from behind, and demanded that Noyd and Price give Sampson "everything" they had. *Id.* at 137. Price gave Sampson twenty dollars, and Noyd gave Sampson all of his money and a plastic grocery bag, which contained marijuana. Sampson and the man exited the car, and Noyd "hit[ ] the gas" and attempted to flee. *Id.* at 142. Price heard a gunshot and saw Sampson pointing a gun at Noyd's car. Noyd drove a short distance before collapsing and dying from a gunshot wound.

During the investigation, the police discovered a bank withdrawal slip dated August 24, 2007, for $500.00 in Noyd's wallet. The police also discovered Kenney's palm prints on the outside of Noyd's car on the passenger side above the rear door. Kenney's girlfriend and the mother of his child, Dominique Hilliard, is Sampson's sister. Sampson's girlfriend, Valicia Spells, owned a red Chevy Tahoe, which Sampson used on August 24, 2007. When the police stopped Sampson and Spells a few days later, Spells's purse contained marijuana in a white, plastic grocery bag and $500.00. A size 5XL orange shirt found in Spells's Tahoe contained a DNA profile that "was a mixture of at least three contributors." *Id.* at 388. Sampson "could not be eliminated as a partial contributor to that mixture," but the "analysis was inconclusive" as to Kenney. *Id.* Price identified Sampson as the first person entering Noyd's car, but he was unable to identify Kenney as the second man entering Noyd's car.

The State charged Sampson and Kenney with murder, felony murder, robbery as a class A felony, and unlawful possession of a firearm by a serious violent felon as a class B felony.[3] A jury found Kenney guilty of felony murder and robbery as a class A felony, and the State dismissed the unlawful possession of a firearm by a serious violent felon charge. The trial court sentenced Kenney only for the felony murder due to double jeopardy concerns. The trial court sentenced Kenney to the minimum sentence of forty-five years in the Indiana Department of Correction.

On appeal, Kenney argues that the evidence is insufficient to sustain his conviction for felony murder. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could

---

**3.** The State also charged Sampson with battery as a class C felony.

find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Pratt v. State*, 744 N.E.2d 434, 437 (Ind. 2001).

The offense of felony murder is governed by Ind.Code § 35–42–1–1(2), which provides: "A person who: ... (2) kills another human being while committing or attempting to commit ... robbery ... commits murder, a felony." Thus, to convict Kenney of felony murder, the State needed to prove that Kenney, while committing or attempting to commit the offense of robbery, did kill Noyd. The jury was also instructed regarding accomplice liability.

Kenney argues that the State's case rested exclusively on the palm prints found on the outside of Noyd's car and the fact that Kenney was acquainted with Sampson. Kenney argues that the outside of Noyd's vehicle was publicly accessible and that he "could have touched the car on any number of occasions when it was parked in a public parking lot or on a public street before the murder." Appellant's Brief at 20. Further, Kenney points out that no one identified him as the second man involved in Noyd's death, that Price described the second man as being between 25 and 30 years of age but Kenney was 41 years old at the time, that the second man wore an orange/yellow shirt and the DNA analysis of an orange size 5XL shirt found in the Tahoe was "inconclusive" as to Ken-

ney, and that none of the money or drugs taken during the robbery were found in Kenney's possession. Consequently, Kenney argues that the State failed to prove beyond a reasonable doubt that he was involved in Noyd's death.

■ Kenney relies upon *Mediate v. State*, 498 N.E.2d 391 (Ind.1986), in which the Court considered "what quantum of additional evidence, if any, is necessary to sustain a conviction based principally upon a fingerprint[.]" 498 N.E.2d at 392. The Court noted that "[a] reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." *Id.* at 393.

When the principal evidence which establishes that an appellant committed the theft or burglary is latent fingerprints, sufficiency of the evidence is an important and difficult question. In many cases in which appellant argues that the only evidence supporting the conviction is his fingerprints, the State also presents additional direct evidence which alone would be sufficient to sustain the conviction or overwhelming circumstantial evidence. Other factors considered by this Court are legitimate access to the fingerprinted object, relocation of the object from its point of origin, and authorization to enter the dwelling or structure.

*Id.* "Additional evidence may provide the basis upon which the State establishes an element of the crime or the trier of fact may infer an element from circumstantial evidence." *Id.* Further, the Court noted:

The preclusion of legitimate access to the object supports the inference that the fingerprints were not made in a lawful manner. Whether the fingerprinted object was located in a public or private place is an important factor. When defendant's fingerprint is found on an object which was never accessible

to the public a reasonable inference arises that the print was made during the crime. *Staggers v. State* (1985), Ind., 477 N.E.2d 539 (box kept in dresser drawer of victim's bedroom). When a fingerprint is found on an object located in a private dwelling but at one time accessible to the public, then defendant's legitimate access to the object must be ruled out. *Powell v. State* (1974), 160 Ind.App. 557, 312 N.E.2d 521 (surface of television set which had been dusted frequently since removed from house for repairs one year prior to crime). Legitimate access is also precluded when the structure is open to the public but the object is located in an area restricted to authorized persons only. *Shuemak v. State* (1970), 254 Ind. 117, 258 N.E.2d 158 (coin box located in car dealership was taken from vending machine which was forcibly opened).

*Id.* at 394. Ultimately, the Court held that, because the defendant's fingerprints were found on an object which may have been previously accessible to the public, the conviction could be sustained only if the defendant's legitimate access to the box of shotgun shells was precluded by the evidence presented at trial. *Id.*

We agree with this statement in the abstract, but believe that it was never intended to be a "rule" that applies with equal force to all cases where a publicly accessible object yields fingerprints. Indeed, were we to interpret the Court's statement as a universal rule of law, other portions of the very same opinion would effectively be rendered meaningless, such as the Court's statement that "a defendant's fingerprint on an object which had been moved during the commission of the offense creates a reasonable inference that defendant left his print on the object when the crime was committed." *Id.* In many cases, as here, the print will be found on an object that is both publicly accessible *and* was touched during the commission of the crime. We cannot say that the fact that the print was found in a public place trumps all other considerations. In our view, *Mediate* does not lay down the "rules" that dictate certain results in fingerprint cases, but, rather, lays out various considerations that will vary in relevance and weight from case to case.[4] The language from *Mediate*, quoted above, refers to situations in which no other evidence exists in the record to support a conviction.

Here, Kenney's unexplained palm prints were found on an object known to have been touched by the perpetrator during the commission of the crime. The record reveals that the second perpetrator walked up to the rear passenger side of Noyd's car and attempted to enter the car, but it was locked. Sampson unlocked the back passenger door, and the man entered the backseat of the car. The police discovered Kenney's palm prints on the outside of Noyd's car on the passenger side above the rear door. The unexplained appearance of Kenney's prints on an object touched during the commission of the crime raises an inference that he left them there during the commission of the crime, despite the public's access to the object.

Further, Kenney's prints were the only ones recovered from the car. Considering the evidence that it was raining the night in question and that rain can affect finger-

---

4. We do not believe that the *Mediate* Court intended to overturn well established precedent that "it is universally recognized a finger, palm or bare footprint found in the place where a crime was committed may be sufficient proof of identity." *Shuemak v. State,* 254 Ind. 117, 119, 258 N.E.2d 158, 159 (1970). Not only does *Mediate* lack any statement to the effect that it intends to overrule *Shuemak* and its ilk, it cites it with favor. *See Mediate,* 498 N.E.2d at 394.

prints, the most reasonable conclusion is that any prints found on the car had been left there recently. While it is certainly *possible* that the print could have been left there at another time, that is not the conclusion that the jury reached. There is no evidence that Kenney was ever anywhere near the car on any other occasion, and the jury would have been under no obligation to credit such evidence in any event.

Moreover, the print evidence is far from the only evidence implicating Kenney. First, Kenney is involved in a long-term relationship with Sampson's sister, leading to the reasonable inference that the two associated. So, we know that Kenney touched a car that was at the scene of a crime committed by his *de facto* brother-in-law. It would be an odd coincidence indeed if those prints just happened to belong to a person who is involved in a long-term relationship with Sampson's sister yet who somehow managed to leave the prints on some prior occasion completely unrelated to the crime that Sampson committed. The jury was entitled to believe that the presence of Kenney's prints was not a mere coincidence.

Second, even though Price was unable to positively identify Kenney, his description of Sampson's accomplice matches Kenney's actual appearance quite closely. Price described the second perpetrator as a light-skinned African American male with "real short hair," weighing approximately 175 pounds, and standing approximately five feet seven inches to five feet eight inches in height, and wearing an orange or "yellow orange" shirt. Transcript at 132. The presentence investigation report lists Kenney as a black male five feet eight inches tall weighing 170 pounds, and a photograph of Kenney taken six days after the crime shows that he has very short hair.[5]

While the jury could have made different inferences from the evidence, we cannot say that the inferences made by the jury here were unreasonable. Thus, we conclude that evidence of probative value exists from which the jury could have found Kenney guilty beyond a reasonable doubt of felony murder.

For the foregoing reasons, we affirm Kenney's conviction for felony murder.

Affirmed.

CRONE, J. and BRADFORD, J. concur.

---

5. We are, of course, aware that describing the characteristics of others based on observation alone is not always the most accurate or reliable method of identification, but we are bound on appeal to credit Price's description of his assailant, which, it cannot be denied, matches Kenney to a remarkable degree. The only particular in which Price's description was not remarkably close to Kenney's true description was his estimate that the perpetrator was twenty-five to thirty years old, when Kenney's age at the time was forty-one. In the end, however, it was for the jury members who observed Kenney in the courtroom, and not us, to evaluate Price's description and how closely Kenney matched it. If the jurors determined that Kenney looked younger than he actually was and evaluated Price's description with that in mind, that was their prerogative.