## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 22 2016, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marshawn Malik Weems,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 22, 2016

Court of Appeals Case No.
71A03-1602-CR-303

Appeal from the St. Joseph
Superior Court

The Honorable J. Jerome Frese,
Judge

Trial Court Cause No.
71D03-1503-F2-4

**Brown, Judge.**

[1] Marshawn Malik Weems appeals his conviction for robbery as a level 2 felony. Weems raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## *Facts and Procedural History*

[2] On February 26, 2015, just after 2:00 p.m., William Chaney was in the driveway of his god-daughter's house on Elwood Street in South Bend, Indiana, helping to unload groceries when a young black male approximately twenty years old and about six-feet tall, wearing dark clothes, approached him from behind and told Chaney to give him his wallet or that he would shoot. Chaney turned around and observed that the man had a gun pointed at Chaney's head, and he tried convincing the man that he did not have any money and that this robbery was a "bad idea." Transcript at 18. The man repeated "your wallet or I shoot you," and Chaney, believing that he did not have enough money to make the assailant happy with just robbing him, threw a jar of jelly at the man's head and "hard-charged" him, forcing the man to back-pedal towards the edge of the alley. *Id.* at 18-19. The man then fired the gun, hitting Chaney in the abdomen, and while Chaney was on the ground the man took his wallet and checkbook. The assailant then ran away.

[3] Officers of the South Bend Police Department responded to the scene, and Chaney told police upon their arrival that he heard his assailant run away in the direction towards Brookfield down an alley. Chaney described the attack and assailant to Officer Samuel Chaput. Officer Nicholas Pogotis located a shell casing for a .45 caliber bullet at the scene. He and other officers noticed a

distinctive shoe impression in the snow behind Chaney's vehicle which continued in a left foot, right foot pattern proceeding west down the alley, turning north in the north-south alley on the east side of Brookfield Street, and then again turning west to the back door of a residence on Brookfield Street. Based on the length of the strides and the toe indentation, it appeared that the person making these impressions had been running. Officers secured the perimeter of the Brookfield residence.

[4] The officers made contact with Marilyn Lumpkin, the current tenant of that residence, who was the mother of Mario Lumpkin. Marilyn consented to a police search of the home, and she told the other occupants, including Weems, Mario, and other female occupants, to come outside. Weems was thin and between five feet, six inches and five feet, eight inches tall, and Mario was heavyset and between five feet, two inches and five feet, four inches tall. Officer David Trout recovered a Ruger .45 caliber handgun from the attic of the home wrapped in a t-shirt and placed between two pillars or joists and under a layer of insulation. When officers searched the basement, they discovered dark clothes in the washing machine in the middle of the wash cycle. Officers also recovered from the house a pair of shoes with a sole pattern consistent with the footprints they had followed from the scene of the shooting to the home, although the shoes were "much smaller" in size than the shoe that had left the footprints. *Id.* at 128.

[5] Detective Gery Mullins transported Weems and his mother, Laurie Cotton, to the South Bend Police Department for questioning. After consulting privately

with his mother, Weems agreed to talk to the police. Weems told Detective Mullins that he and Mario had left the house to walk to Martin's to buy a frozen pizza but went back to change clothes after "he realized how cold it was." *Id.* at 181. Detective Mullins asked Weems if he knew anything about guns in the Lumpkins' home, and he initially denied knowing anything. Detective Mullins asked Weems if his fingerprints were on the gun, and Weems stated yes because he and Mario had been handling the guns the night before. After Detective Mullins explained to Weems that he could compare a shell casing recovered from the scene of a crime with a particular gun and could determine whether that gun was used to fire the bullet, Weems told Detective Mullins that "you're going to find out that that gun was used in the shooting." *Id.* at 184. Weems did not explain how he knew that the gun was used or how it had been placed in the attic.

[6] The police confiscated the cell phones of Weems and Mario and obtained a search warrant. A number of videos were recovered from the phones, including a video on Weems's phone recorded within an hour prior to the robbery of Chaney depicting Weems holding the gun recovered from the house and saying "get yo f-ckin' money, ya man . . . ain't nothin' to it but to do it man, ain't nothin' to it but to do it" and "I know y'all wonderin' what the f-ck this is, but it's a f-ckin' 30 b-tch." State's Exhibit 40. Another video on Weems's phone three days before the robbery depicted Weems walking through an alley, in which still frames of the left and right shoes he was wearing depicted the Air Jordan logo, similar to the shoes recovered from the home and matching the

footprints in the snow after the robbery. A third video on Weems's phone shows Weems walking with Mario about thirty minutes after the robbery on Elwood Street, in which Weems states: "mo-f-ckers ain't know what the f-ck it is, we da reason why we got these detectives on that case . . . detectives boy . . . look at this sh-t . . . y'all finna see us here, we [inaudible] it . . . look at this sh-t," and "that's it bro, that's it, we the reason why the detectives on the [inaudible]." State's Exhibit 41. At the time the video was made, officers had not yet arrived at the Brookfield residence and were following the footprints in the snow.

[7] A fourth video, over seven minutes long, recovered from Weems's phone depicts Weems staying out of view of police by standing on the stairwell in the house while Mario speaks with an officer through a storm door, and depicts Weems trying to whisper answers to Mario. In the video, the officer asks Mario if anyone else is in the house, and Mario responds that only he, his younger sister, and his aunt are home. The recording shows Weems sneaking down the stairs to observe the officers stationed outside through closed window blinds, and Weems turns the camera to record himself giving the middle finger towards the direction of the police and stating "f-ck" and "f-ck the law." State's Exhibit 42.

[8] On March 2, 2015, the State charged Weems with robbery as a level 2 felony. On December 11, 2015, the court held a bench trial at which evidence consistent with the foregoing was presented. At the trial, Dinay Lloyd, who came into contact with Weems while they were both being held at the St.

Joseph County Jail, testified that Weems told him that he was in jail because "he attempted to rob a person while unloading some groceries," that "the person hit him" with "[a] jar of jelly," and that "he shot him in the leg" and "ran to his family, his cousin's house, where they followed him back to -- where they traced him through -- through the snow." Transcript at 150-151. Ray Wolfenbarger, a firearm and tool mark examiner for the South Bend Police Department, testified that the shell casing found at the scene of the robbery was fired from the handgun recovered from the Lumpkins' attic.

[9] The court found Weems guilty as charged and on January 7, 2016, sentenced him to a term of twenty years.

### *Discussion*

[10] The issue is whether the evidence is sufficient to sustain Weems's conviction for robbery as a level 2 felony. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* It is well established that "circumstantial evidence will be deemed

sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Kenney v. State*, 908 N.E.2d 350, 352 (Ind. Ct. App. 2009), *trans. denied*. Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. *Gleaves v. State*, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing *Badelle v. State*, 754 N.E.2d 510 (Ind. Ct. App. 2001), *trans. denied*).

[11] The offense of robbery is governed by Ind. Code § 35-42-5-1, which provides that:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> > (1) by using or threatening the use of force on any person; or
> >
> > (2) by putting any person in fear;
>
> commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

Thus, to convict Weems of robbery as a level 2 felony, the State needed to prove that he knowingly or intentionally took property from Chaney by using

or threatening the use of force or by putting Chaney in fear, which resulted in serious bodily injury.

[12] Weems suggests that the evidence was insufficient to prove that he was the person who shot Chaney, noting specifically that Cheney did not identify him at trial and did not precisely remember the clothing worn by the assailant. He argues that the shoes recovered from the home were too small to make the footprints leading from the scene to the house and, although a video from Weems's phone depicts him wearing Air Jordan shoes, without the actual shoe owned by Weems there is no way to compare size and tread pattern. Weems asserts that, "[w]hile officers testified that they did not see anyone enter or leave the residence on Brookfield from the time that they began their surveillance, there was a period of time between the shooting and the police arrival at the home where people came and left" and that the State cannot say there was no one else at the house who had access to the gun because Weems and Mario left to purchase a frozen pizza. Appellant's Brief at 6 (citation omitted). The State maintains that it presented sufficient evidence to convict Weems.

[13] The evidence most favorable to Weems's conviction reveals that, on February 26, 2015, a person matching his description robbed Chaney, shot him in the abdomen, and ran down an alley, leaving a trail of footprints from Air Jordan shoes. Video recovered from Weems's phone shows him wearing Air Jordan shoes three days before the robbery. The footprints led police to a residence on Brookfield Avenue that was occupied by Weems and his friend Mario Lumpkin, who was shorter and stockier than Weems, and Weems and Mario

were the only males at the residence. Upon searching the residence, police recovered a Ruger .45 caliber handgun, which had been hidden in the attic of the home wrapped in a t-shirt between two joists and under a layer of insulation, as well as dark clothes being washed in the washing machine. Wolfenbarger determined that it was the same handgun that had been used to shoot Chaney. After first denying any knowledge of the gun, Weems admitted to Detective Mullins that his fingerprints were on the gun and that the police would discover that it was indeed the gun used to shoot Chaney, although he was unable to explain how he knew the gun had been used in the shooting or why it was hidden in the attic. Another video recovered from Weems's phone made one hour prior to the robbery of Chaney depicts Weems holding the same gun stating "get yo f-ckin' money, ya man . . . ain't nothin' to it but to do it man, ain't nothin' to it but to do it" and "I know y'all wonderin' what the f-ck this is, but it's a f-ckin' 30 b-tch." State's Exhibit 40.

[14] Additionally, a third video recovered from Weems's phone recorded approximately thirty minutes following the robbery depicts Weems and Mario walking on Elwood Street, in which Weems states: "mo-f-ckers ain't know what the f-ck it is, we da reason why we got these detectives on that case . . . detectives boy . . . look at this sh-t . . . y'all finna see us here, we [inaudible] it . . . look at this sh-t," and "that's it bro, that's it, we the reason why the detectives on the [inaudible]." State's Exhibit 41. Another video shot during the police encounter with Mario at the door of the Brookfield residence depicts Weems whispering answers to Mario for the police and Weems recording himself

giving the middle finger towards the direction of the police and stating "f-ck" and "f-ck the law." State's Exhibit 42. Additionally, Dinay Lloyd testified that Weems admitted to shooting Chaney and recited the circumstances of the offense consistent with the facts presented at trial.

[15] Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find beyond a reasonable doubt that Weems committed the crime of robbery as a level 2 felony. *Hill v. State*, 773 N.E.2d 336, 347-348 (Ind. Ct. App. 2002) (holding that the evidence was sufficient to support Hill's convictions for robbery, criminal confinement, and carrying a handgun without a license, where the evidence revealed that "a man, armed with a gun and wearing a white jacket, jean shorts, white tube socks, and white tennis shoes, shot Barr in the stomach, ordered Wagner to open the register and lie on the floor, and stole money from the register at the liquor store," that the robber drove away and crashed into some trees and left the car, leaving the gun behind, and ran through a creek and toward Gale Street, that between Gale Street and the creek police recovered a beige jacket, that a winded Hill knocked on a door and asked to use the phone "wearing jean shorts, white socks, and white tennis shoes, and he had to take his socks off to wring them out because they were soaked with water," and that his fingerprint was found on the car that the robber had been driving), *reh'g granted on other grounds*, 777 N.E.2d 795 (Ind. Ct. App. 2002), *trans. denied*, *cert. denied*, 540 U.S. 832, 124 S. Ct. 79 (2003); *see also Kenney*, 908 N.E.2d at 353-354 (affirming the defendant's conviction for felony murder based upon

evidence including the presence of his palm print found outside of the victim's car and that the defendant was acquainted with a co-defendant, and noting that even though an eyewitness was unable to positively identify the defendant he closely matched the description given).

## *Conclusion*

[16] For the foregoing reasons, we affirm Weems's conviction for robbery as a level 2 felony.

[17] Affirmed.

Robb, J., and Mathias, J., concur.