Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KEITH ELLIS,                          )
                                      )
    Appellant-Defendant,          )
                                      )
       vs.                     )    No. 49A02-1212-CR-983
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
The Honorable Stanley E. Kroh, Commissioner
Cause No. 49G04-1204-FB-28216

**August 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Keith Ellis appeals his conviction for Class C felony robbery, arguing that Appellee-Plaintiff the State of Indiana committed prosecutorial misconduct amounting to fundamental error. Specifically, Ellis claims that, during closing argument, the prosecutor commented on Ellis's decision to represent himself, in violation of his Sixth Amendment right to self-representation. Because Ellis's decision was made knowingly, voluntarily, and intelligently, we determine this claim to be without merit. Ellis also claims that the prosecutor commented on his decision not to testify, in violation of his Fifth Amendment privilege against self-incrimination. Assuming that the prosecutor's comment was improper, we conclude that Ellis has failed to establish fundamental error. The State presented overwhelming and uncontradicted evidence of Ellis's guilt. The judgment of the trial court is affirmed.

**FACTS AND PROCEDURAL HISTORY**

On April 26, 2012, Dwayne Chandler placed a telephone call to a singles chat line and spoke with a woman nick-named "Sparkles." Sparkles was later identified as Kayla Nash. Nash and Ellis were dating, and the couple shared an apartment. Chandler was homeless. During Chandler and Nash's telephone conversation, Nash offered to let Chandler stay at her apartment for a couple of days in exchange for $200. Chandler and Nash made plans to meet the following day at Nash's apartment. Ellis and Nash intended to rob Chandler when he arrived.

Chandler met Nash at her apartment on April 27, 2012. Ellis was not home when Chandler arrived. Nash and Chandler conversed for approximately ten minutes, at which

2

point Ellis came into the apartment holding a black garbage bag and a small, semiautomatic handgun. Chandler panicked, and Ellis told him to shut up and empty his pockets. Chandler hesitantly surrendered approximately $220 and his driver's license. Ellis also seized Chandler's cell phone from the table where it was charging. Ellis pointed the gun at Chandler's head and asked if he was willing to die over a phone.

In what can only be described as a bizarre turn of criminal events, Ellis next ordered Nash to perform oral sex on Chandler. At Nash's insistence and at Ellis's gunpoint, Chandler went to the bathroom to wash himself. When Chandler exited the bathroom, Ellis again pointed the gun at him and asked if he was a cop. Ellis then ordered Chandler to take off his shirt to see if he was wearing a wire. Eventually, Ellis allowed Chandler to leave the apartment. As Chandler left, Ellis pushed him and hit him in the back. Chandler ran to his car, drove to a friend's house, and called 911.

Figuring that Chandler would call the police, Nash and Ellis concocted the story that Chandler had attempted to rape Nash. Nash then called 911 and reported an attempted rape. She also hid Chandler's driver's license under a flower pot in the dining room and his cell phone in the downstairs laundry room. Officer Nicholas Gallico responded to Nash's report of an attempted rape but noticed no signs of a struggle on Nash or inside the apartment. A sex crimes detective also responded and found Ellis and Nash to be oddly calm.

Meanwhile, police received a report of a robbery having occurred at Ellis and Nash's apartment. Already at the scene, the officers received consent to search the apartment and found a gun holster inside a black garbage bag in the bedroom. The

holster was designed for a small, semiautomatic handgun that fit Chandler's description of the gun used in the robbery. Police later found Chandler's driver's license underneath a flower pot in the dining room.

Ellis and Nash were arrested and transported to the police station. There, Chandler identified Ellis and Nash as the robbers. Ellis and Nash were separated to be interviewed, and, as Ellis was escorted away from Nash, he repeatedly yelled to her, "[S]tick to the story." Tr. p. 116. Ellis was charged with Class B felony robbery.[1]

At trial, Ellis proceeded *pro se* with stand-by counsel. "Despite blunders, he acted as counsel throughout the jury phase. For example, the trial court rebuked him for interrupting, and he asked [the court] for advice despite being warned it could not be given." Appellant's Br. p. 12. "[Ellis's] case was complicated by the fact that every State's witness identified him and that he cross-examined these witness as Keith Ellis, advocate, by in artfully [sic] referring to Keith Ellis, defendant, in the first person." Appellant's Br. p. 9. For example, Ellis asked Chandler, "Did I hit you closed fist, a slap, or with a weapon?" "Do you … remember how many times I hit you, sir?" "Where did I hit you at, sir? Tr. p. 81.

During the State's closing argument, the prosecutor made the following comments:

> I want to talk a little bit about -- Mr. Ellis has been acting as his own attorney. Mr. Ellis has the absolute, Constitutional right to act as his own attorney. What I want you to consider if you felt that it was ineffective in some way or if you felt that the State was behaving improperly as far as objecting to the forms of his questions continuously throughout the course

---

[1] Nash pled guilty to Class D felony assisting a criminal in exchange for her testimony in Ellis's trial.

4

of this trial, I just want you to know that we are all held to the same legal standard. Mr. Ellis is acting as his own attorney. What you heard from him was his role as an attorney. And I want you to consider what you heard from him and evaluate only the facts as elicited from that chair, not necessarily what he said, what was objected to, or what the prosecutors … did in response to his questions. Your verdicts should be based on the law and the facts as you find them. It should not be based on sympathy or bias. That is an instruction the judge will give you at the close of these arguments, and it's something I want you to strongly consider. You might feel sympathy towards Mr. Ellis for acting as his own attorney, but this was a right he exercised: His Constitutional right. He made the choice. I don't want … the jury to feel that it was some conscious objective on the part of the State to do that. This was his choice and whether or not he performed effectively, that'll be up to you. But I ask that it's not based on sympathy. The second thing I want you to consider is another instruction[]: Statements made by attorneys are not evidence. He did not testify. Nothing he has said today counts toward testimony. He was speaking as an attorney. So the things that he were -- was saying --

Tr. p. 314-16. At this point, Ellis objected to the prosecutor's comments. The following exchange then took place between the trial court and the prosecutor:

**The Court:** All right. Well, ladies and gentlemen, what the parties say in closing argument is not evidence. You know, you can accept or reject these arguments as you see fit and I would ask --

**[Prosecutor]:** I won't reference it again.

**The Court:** Okay.

**[Prosecutor]:** It was in the context of statements made by attorneys are not evidence.

**The Court:** Certainly.

**[Prosecutor]:** Absolutely no reflection on his decision. He has an absolute right to do that.

**The Court:** Right. All right. If you'll please continue.

Tr. p. 316. Ultimately, the jury found Ellis guilty as charged, and the trial court sentenced him to sixteen years of incarceration.

5

**DISCUSSION AND DECISION**

Ellis argues that the State committed prosecutorial misconduct by commenting during its closing argument on his decisions to represent himself and to not testify at trial.

> When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004); *Brewer v. State*, 605 N.E.2d 181, 182 (Ind. 1993). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Dumas*, 803 N.E.2d at 1117. Failure to request an admonishment or to move for mistrial results in waiver. *Id.*

*Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). Although Ellis objected to the prosecutor's comments at trial, he appropriately acknowledges that he failed to move for a mistrial following the trial court's admonishment. Therefore, "our standard for review is different from that of a properly preserved claim." *Id.* Where a claim of prosecutorial misconduct has been waived

> the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Booher* [*v. State*], 773 N.E.2d [814], 817 [(Ind. 2002)]; *see also Johnson v. State*, 725 N.E.2d 864, 867 (Ind. 2000) (A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct results in waiver of appellate review.). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

*Cooper*, 854 N.E.2d at 835 (first three alterations added).

### I. Whether the Prosecutor Erred in Commenting on Ellis's Decision to Represent Himself

Ellis contends that the prosecutor committed misconduct in commenting on his decision to represent himself at trial. Specifically, Ellis claims that the prosecutor's

comments violated his Sixth Amendment right to self-representation. *See generally Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004) (discussing *Faretta v. California*, 422 U.S. 806, 821 (1975)). Contrary to his claim, however, Ellis concedes that he was permitted to represent himself throughout trial. He also admits that his decision to waive his right to counsel was voluntary, knowing, and intelligent, and that the trial court twice advised him of the perils of self-representation and the advantages of having a lawyer. Accordingly, Ellis's Sixth Amendment right to self-representation was not violated. *See Osborne v. State*, 754 N.E.2d 916, 920-21 (Ind. 2001) (discussing proper waiver of right to counsel).

Moreover, the prosecutor's comments were made in the context of communicating to the jury that *pro se* litigants are held to the same legal standard as attorneys and that the jury's verdict should not be based on sympathy toward Ellis's *pro se* status. This amounts to neither misconduct nor fundamental error. *See People v. Redd*, 670 N.E.2d 583, 598 (Ill. 1996) (holding prosecutor's comments urging jurors not allow defendant's *pro se* status to influence their verdict did not prejudice the defendant).

## II. Whether the Prosecutor Erred in Commenting on Ellis's Decision Not to Testify

Ellis also contends that the prosecutor committed misconduct in commenting on his decision not to testify at trial. Specifically, Ellis claims that the prosecutor's comments violated his Fifth Amendment privilege against self-incrimination. The Fifth Amendment to the United States Constitution prohibits compelling a defendant to testify against himself and has been interpreted to bar prosecutorial comment on a defendant's silence. *Jenkins v. State*, 725 N.E.2d 66, 69 (Ind. 2000) (citing *Griffin v. California*, 380

7

U.S. 609, 615 (1965)).  A Fifth Amendment violation occurs "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence."  *Id.* (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)).

Assuming that the prosecutor's comment was improper, we conclude that it does not rise to the level of fundamental error.  "For prosecutorial misconduct to be fundamental error, it must be demonstrated that the prosecutor's conduct subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision." *Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000).  Here, the prosecutor merely stated, "He did not testify," Tr. p. 316, while communicating to the jury that its verdict should be based on the evidence presented at trial and that statements made by Ellis while representing himself were not evidence.  Moreover, the State presented overwhelming and uncontradicted evidence of Ellis's guilt.  Both Chandler and Nash testified that Ellis robbed Chandler at gunpoint.  Nash further testified that she and Ellis lured Chandler to their apartment with the intent to rob him.  Inside the apartment, police found Chandler's driver's license and a gun holster designed for a gun matching Chandler's description of the gun used in the robbery.  Additionally, Nash testified that, after the robbery, she and Ellis collaborated on a cover-up story involving an attempted rape.  And at the police station, Ellis repeatedly yelled to Nash, "Stick to the story."  Tr. p. 116.  In light of this evidence, we do not find that the prosecutor's comment subjected Ellis to grave peril.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.

8