

IN THE

# Court of Appeals of Indiana

Johnathan Juvinall,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Oct 09 2025, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

October 9, 2025

Court of Appeals Case No.
25A-CR-435

Appeal from the Warren Circuit Court

The Honorable Hunter J. Reece, Judge

Trial Court Cause No.
86C01-2405-F5-84

**Opinion by Judge Mathias**
Judges May and Bradford concur.

**Mathias, Judge.**

[1] Johnathan Juvinall appeals his convictions for Level 5 felony strangulation and Level 5 felony domestic battery[1] following a jury trial. Juvinall presents two issues for our review:

> 1. Whether the State committed prosecutorial misconduct during its opening argument.
>
> 2. Whether his sentence is inappropriate in light of the offenses and his character.

[2] We affirm.

## Facts and Procedural History

[3] On May 8, 2024, Juvinall and his wife, R.J., were staying in a motel in Covington when an argument between them turned physical. At one point, Juvinall grabbed R.J. "by [her] throat" and "lifted [her] up off the floor" with his hands still around her throat. Tr. Vol. 2, p. 188. Juvinall then struck R.J.'s head against a nearby wall "a couple [of] times." *Id.* Juvinall finally released R.J., and she "slid down the wall" to the floor. *Id.* Juvinall left the motel room, and R.J. locked the door behind him. R.J. immediately called a friend, Gerald

---

[1] The abstract of judgment shows that the trial court "merged" the two findings of guilt at the State's request in an effort to avoid a double jeopardy problem, but the sentencing statement shows a judgment of conviction for both counts. *See* Tr. Vol. 3, p. 98; Appellant's App. Vol. 2, pp. 96, 98. Neither Juvinall nor the State raises these inconsistencies on appeal, and, therefore, we do not address the merger issue.

Kilby, to tell him what had happened, and she asked him to come and get her. R.J. then called 9-1-1.

[4] Covington Police Department Chief Shannon Foster arrived at the scene and spoke with R.J. Juvinall had left the scene in his car before law enforcement arrived. Chief Foster observed that R.J. was "physically and emotionally upset," and he "thought her neck was really red . . . ." *Id.* at 103-04. Chief Foster believed that the "marks" on her neck were consistent with her report that Juvinall had strangled her. *Id.* at 107.

[5] The State charged Juvinall with Level 5 felony strangulation and Level 5 felony domestic battery, and the State alleged that Juvinall was a habitual offender. During the State's opening argument at trial, the prosecutor read from a letter Juvinall had sent to a girlfriend, Amanda Harper,[2] in September ("the first letter"). In the letter, later admitted as State's Exhibit 11(a), Juvinall instructed Harper to help him come up with an alibi to show that he was not with R.J. on May 8. Juvinall told Harper that the strangulation happened between 2:48 p.m. and 2:52 p.m. on May 8 and that "the times [they] were at [her mom's house, a storage facility, and a laundromat] have to take up the elapsed time of the supposed incident." Ex. Vol. 4, p. 129. Juvinall continued by recounting the exact times he and Harper were purportedly at various places throughout the day, and he urged her to let him know what she told the prosecutor so that he

---

[2] Juvinall refers to Harper as his "wife" in the letter, but nothing in the record shows that he divorced R.J. and married Harper.

would say "the same exact thing . . . in court . . . ." *Id.* at 131. Near the end of the letter, Juvinall stated, "Look, babe, we can beat this b**** [(referring to the prosecutor)]. We just have to work together and stick together on this s***." *Id.* at 131-32.

[6]     After summarizing the contents of the letter, the prosecutor said to the jury,

> [n]ow I'm sure Mr. Juvinall—I know he does—has an explanation for why . . . he would have written a letter that goes into painstaking detail about everything that they did that day, right down to ordering four McChickens with light lettuce in this letter. But at the end of the day. . . .

Tr. Vol. 2, p. 99. Juvinall objected, and a sidebar ensued.[3] Defense counsel argued that the prosecutor's statement "impinged on [Juvinall's] fifth amendment right and . . . placed Mr. Juvinall in a position that he may have to explain or testify." Appellant's App. Vol. 2, p. 107. And defense counsel requested a mistrial. In response, the State argued that

> Mr. Juvinall wrote a second letter to his alibi witness wherein he attempted to explain his reasoning for writing the first letter that was being referred to in the opening statement. Further, that the State intended to introduce that second letter as evidence, and was referring to that letter as Mr. Juvinall's explanation.

*Id.* The trial court denied Juvinall's motion for a mistrial.

---

[3] The sidebar was not transcribed, but the parties submitted a verified agreed statement of the evidence, which the trial court certified.

[7] The State later admitted into evidence Exhibit 16, a second letter Juvinall had written to Harper in October ("the second letter").[4] In that letter, Juvinall stated that "the reason" he wrote the first letter is because Harper had asked him to and because Harper had suffered "severe head trauma and a brain injury," which caused her to have "a hard time remembering things . . . ." Ex. Vol. 4, p. 140. Juvinall stated in the second letter, repeatedly, that Harper had asked him to write the first letter to help her "remember everything that day[.]" *Id.*

[8] The jury found Juvinall guilty as charged, and Juvinall admitted to being a habitual offender. The trial court entered judgment of conviction and sentenced Juvinall to 2,007 days (five and one-half years) for the Level 5 felony strangulation conviction enhanced by 1,642 days (four and one-half years) for the habitual offender adjudication, for an aggregate ten-year term. This appeal ensued.

## Discussion and Decision

### Issue One: Prosecutorial Misconduct

[9] Juvinall first contends that the prosecutor committed misconduct during opening argument. Juvinall objected to the prosecutor's statement and moved for a mistrial, and the trial court denied that motion. Our standard of review is well settled. We review the trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. *Isom v. State*, 31 N.E.3d 469, 480 (Ind. 2015).

---

[4] Again, Juvinall refers to Harper as his "wife" in the second letter.

"A mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation." *Id.* at 481 (alteration and quotation marks omitted).

[10] As our Supreme Court recently explained,

> [w]hen reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine "(1) whether misconduct occurred, and if so, (2) 'whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id.* (emphasis in original) (quoting *Cooper*, 854 N.E.2d at 835).

*Konkle v. State*, 253 N.E.3d 1068, 1077 (Ind. 2025).

[11] Juvinall argues that the prosecutor violated his Fifth Amendment right to remain silent when she referred to his having an explanation for what he wrote in the first letter to Harper. Juvinall maintains that the prosecutor's statement "would improperly penalize [his] exercise of the right to remain silent had he not 'explained to the jury' why he wrote a letter." Appellant's Br. at 17. Under the unique facts and circumstances of this case, we disagree.

[12] The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable

interpretation by a jury as an invitation to draw an adverse inference from the defendant's silence. *Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000). However, our Supreme Court "has indicated that[,] if in its totality the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Id.* (quotation omitted).

[13] Here, during opening argument, the prosecutor read from the first letter, which included Juvinall's pleas that Harper work with him on an alibi. The prosecutor then said, "[n]ow I'm sure Mr. Juvinall—*I know he does*—has an explanation for why . . . he would have written a letter that goes into painstaking detail about everything that they did that day, right down to ordering four McChickens with light lettuce in this letter." Tr. Vol. 2, p. 99 (emphasis added). The prosecutor did not make any reference to whether Juvinall would or would not *testify* to provide an explanation for the letter, which would have referred to his Fifth Amendment right. Rather, as the prosecutor later explained during a sidebar conference, she was referring to the second letter, which included Juvinall's explanation for being so specific about his whereabouts in the first letter.

[14] Harper did not testify at trial, but her deposition was admitted as State's Exhibit 11, and the first letter from Juvinall was admitted as Exhibit 11(a). After the

jurors read the first letter, the second letter was admitted as Exhibit 16.[5] The trial court stated that, rather than letting the jurors read the second letter at that time, the court would provide copies to the jurors during deliberations. The second letter included a reference to Harper having shared the first letter with the prosecutor. Juvinall expressed concern about Harper's loyalty to him. And Juvinall referred to Harper's "head trauma" and "brain injury" and her request that he help her remember what they did on May 8 as the reasons for the details he had included in the first letter. Ex. Vol. 4, p. 140.

[15]     When the State rested its case, Juvinall renewed his motion for a mistrial based on the prosecutor's remarks during opening argument about the first letter. And defense counsel stated that he wanted to be "on the record" that he was "having [Juvinall] testify . . . under protest." Tr. Vol. 2, p. 241. The prosecutor reiterated that her remarks

> went to the exhibit that the State introduced where he explained why he wrote the letter talking about it was because she asked him to and this traumatic brain injury and so that's what the comment in the opening statement went to is evidence the State expected to introduce and did, in fact, introduce. It had nothing to do with an expectation for him to testimony or comment on whether he would or would not testify.

---

[5] We note that Juvinall did not object to the admission of State's Exhibit 11(a). And while he objected to State's Exhibit 16 for lack of a "good foundation," his brief on appeal does not include a challenge to the trial court's admission of the second letter into evidence over that objection. Tr. Vol. 2, pp. 135-36.

*Id.* at 242. The trial court agreed with the prosecutor's explanation and denied Juvinall's renewed motion for a mistrial. During his testimony, Juvinall testified that the reason for the first letter "was just to refresh [Harper's] memory on the things [they had] done on May 7th and May 8th because [Harper] had traumatic brain damage, head trauma and brain damage." Tr. Vol. 3, p. 13. Thus, his testimony relevant to the first letter was merely cumulative of what he said in the second letter.

[16] In sum, the second letter provided Juvinall's explanation for the first letter, and the prosecutor did not reference Juvinall's right to remain silent. *See Hancock*, 737 N.E.2d at 798. Thus, the prosecutor's remarks during opening argument did not constitute misconduct. In addition, Juvinall has not shown that he suffered grave peril as a result of the remarks. *Konkle*, 253 N.E.3d at 1077. As the State points out, the trial court properly instructed the jury regarding Juvinall's Fifth Amendment right to remain silent, and "[i]t is presumed that jurors follow their instructions." *Weisheit v. State*, 109 N.E.3d 978, 989 (Ind. 2018). Under these unique facts and circumstances, the trial court did not abuse its discretion when it denied Juvinall's motion for a mistrial.

**Issue Two: Sentence**

[17] Juvinall also argues that his sentence is inappropriate in light of the offenses and his character. Under Indiana Appellate Rule 7(B), we may modify a sentence that we find is "inappropriate in light of the nature of the offense and the character of the offender." Making this determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to

others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[18] However, sentence modification under Rule 7(B) is reserved for "a rare and exceptional case." *Livingston v. State*, 113 N.E.3d 611, 612 (Ind. 2018) (per curiam). Thus, when conducting this review, we will defer to the sentence imposed by the trial court unless the defendant demonstrates compelling evidence that portrays the nature of the offenses and his character in a positive light, such as showing a lack of brutality in the offenses or showing substantial virtuous character traits. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] The sentencing range for a Level 5 felony is one year to six years, with an advisory term of three years. Ind. Code § 35-50-2-6. In imposing the five-and one-half-year sentence for the strangulation conviction, the trial court found two aggravators: Juvinall's criminal history and his recent violation of the "conditions of probation, parole, pardon, Community Corrections placement, [or] pretrial release . . . ." Tr. Vol. 3, p. 96.[6] The trial court identified two mitigators: Juvinall's waiver of a jury trial on the habitual offender adjudication and his "strong family ties . . . ." *Id.* at 96-97. And the trial court enhanced Juvinall's sentence by four and one-half years for being a habitual offender.

---

[6] The trial court imposed no sentence on the domestic battery conviction, which it purported to "merge" with the strangulation conviction for sentencing purposes.

[20] Regarding the nature of the offenses, Juvinall reasserts his innocence, which is not well taken. *See* Appellant's Br. at 22. In the alternative, Juvinall argues that his actions support only an advisory sentence of three years. Specifically, Juvinall claims that his offense was "typical" of a strangulation. *Id.* But strangulation requires only that Juvinall knowingly or intentionally applied pressure to R.J.'s neck in an angry manner. *See* I.C. § 35-42-2-9. Here, the evidence showed that Juvinall lifted R.J. off the ground by her neck and slammed her head against a wall, twice. We cannot say that Juvinall's sentence is inappropriate in light of the nature of the offenses.

[21] Next, Juvinall states that he "had a rough up bringing [sic] which included quitting school in the sixth grade along with him being placed in DOC as a juvenile." Appellant's Br. at 23. But Juvinall does not direct us to any compelling evidence that portrays his character in a positive light, such as evidence of substantial virtuous character traits. *See Stephenson*, 29 N.E.3d at 122. Indeed, Juvinall's criminal history is significant and includes a prior conviction in Illinois for strangling R.J. We cannot say that Juvinall's sentence is inappropriate in light of his character.

[22] For all these reasons, we affirm Juvinall's convictions and sentence.

[23] Affirmed.

May, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Montgomery Law Office
Lafayette, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana